# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

DWIGHT SIMONSON, individually and
on behalf of all others similarly situated,
                              Plaintiff,

              v.

THE HERTZ CORPORATION,
AMERICAN TRAFFIC SOLUTIONS, INC.,
and PLATEPASS LLC
                              Defendants

Civil Action No. 1:10−CV−01585−NLH −KMW

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

*Submitted by*:

COHEN, PLACITELLA & ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701-1717
(732) 747-9003
Attorneys for Plaintiff and the  Putative Class

Of Counsel:

Steven R. Jaffe, Esq.
Mark S. Fistos, Esq.
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
(Admission *pro hac vice* to be applied for)

Stephen A. Dunn, Esq.
Matthew E. Lee, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 426
Raleigh, North Carolina 27602
(919) 832-0329
(Admission *pro hac vice* to be applied for)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.   Summary of the Argument........................................................................................... 1

II.  The Legal Standard for Motions to Dismiss ........................................................... 4

III. Argument .................................................................................................................... 5

   A.   PLAINTIFF'S COMPLAINT ADEQUATELY ALLEGES PLAINTIFF AND CLASS
   MEMBERS DID NOT BARGAIN FOR PLATEPASS ADMINISTRATIVE FEE CHARGES,
   WHICH ARE MATERIAL. ................................................................................................. 5

      1.   Price and Rate Terms are Material Contract Terms........................................ 5

      2.   The Hertz Rental Contract Omits Material Terms Relating to PlatePass Administrative
      Charges .................................................................................................................... 7

      3.   The Doctrine of Last Antecedents Belies Defendants' Contentions that the Hertz
      Rental Contract Clearly Authorizes Defendant to Imposes PlatePass Administrative Fees. 11

   B.   PLAINTIFF PROPERLY ALLEGES "UNLAWFUL PRACTICES" UNDER THE NEW
   JERSEY CONSUMER FRAUD ACT ("NJCFA") .................................................................. 13

      1.   The NJCFA is Interpreted Liberally to Effectuate its Remedial Purposes .................. 13

      2.   The Elements of a Claim under the NJCFA ................................................... 14

      3.   Plaintiff Adequately Pleads Knowledge and Intent under the NJCFA......................... 17

   C.   DEFENDANTS CANNOT INVOKE THE VOLUNTARY PAYMENT DOCTRINE .. 24

      1.   Plaintiff Did Not Have "Full Knowledge of the Facts" and Payment of the PlatePass
      Administrative Fee Was Not "Voluntary" Because It Was The Result of Deception .......... 24

      2.   Defendants Cannot Parse Payment of PlatePass Administrative Fees from the
      Underlying Rental Transaction ............................................................................ 26

      3.   The "Voluntary Payment Doctrine" is Inapplicable in a Consumer Case such as this. 27

   D.   PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS PROPERLY PLED ............ 29

IV. Conclusion .................................................................................................................. 31

# TABLE OF AUTHORITIES

## Cases

*Baer v. Chase*, 392 F.3d 609, 618 -619 (3d Cir. 2004) ............................................................. 5, 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 5

*Byrne v. Weichert Realtors*, 290  N.J.Super. 126, 675 A.2d 235 ( ( App. Div. 1996) .................. 15

*Carton v. Choice Point, Inc.,* 482 F. Supp. 2d 533 (D.N.J. 2007) ............................................... 14

*Chattin v. Cape May Greene, Inc*.,  124 N.J. 520, 591 A.2d 943 (N.J. 1991) ............................. 19

*Choice Neckwear, Inc. v. Fedex Corp.*  2007 WL 4554220 (D.N.J.,2007) ................................. 16

*City of Camden v. Green*, 54 N.J.L. 591, 25 A. 357 (E.& A. 1892) ............................................ 28

*Continental Trailways, Inc. v. Director, Div. of Motor Vehicles,* 102 N.J. 526, 509 A.2d 769
    (1986) ..................................................................................................................................... 28

*Cox v. Sears Roebuck*, 138 N.J. 2,  647 A.2d 454 (1994) .................................................. 14, 16, 20

*Delaney v. American Express Co*., 2007 WL 1420766 (D.N.J. 2007) ......................................... 17

*D'Ercole Sales, Inc. v. Fruehauf Corp*., 206 N.J.Super. 11, 501 A.2d 990 (App.Div.1985) . 16, 21

*Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 512 (D.N.J. 2008) ..................................... 4, 5, 30

*Elliot Coal Min. Co., Inc. v. Director, Office of Workers' Compensation Programs*, 17 F.3d 616,
    629 (3d Cir. 1994) ............................................................................................................. 11, 12

*F.T.C. v. Crescent Pub. Group, Inc*., 129 F.Supp.2d 311, 321 (S.D.N.Y. 2001) .......................... 6

*FTC v. Cyberspace.com, LLC*, 453 F. 3d 1196, 1201 (9th Cir. 2006) .......................................... 6

*FTC v. Wilcox*, 926 F. Supp. 1091 (S.D. Fla. 1995) ................................................................... 11

*Gamble v. Connolly,* 399  N.J. Super. 130, 142 943 A.2d 202, 209 (App. Div. 2007) ............ 7, 10

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350 (1997) ...................................... 15

*Goldsmith v. Camden County Surrogate's Office*, 408 N.J. Super. 376 , 975 A.2d 459(App. Div.
    2009). ..................................................................................................................................... 29

*Haspel v. State Farm Mut. Auto. Ins. Co*., 241 Fed.Appx. 837, 838 (3d Cir. 2007) ..................... 5

*Hassler v. Sovereign Bank*, 644 F.Supp.2d 509 (D.N.J. 2009), *aff'd* , 2010 U.S. App. LEXIS
    5445 (3d Cir. 2010) ............................................................................................................... 17

*In re Cliffdale Assocs., Inc*.,103 F.T.C. 110 (1984) ................................................................. 6, 11

*In re National Credit Management Group, L.L.C.*  21 F.Supp.2d 424 (D.N.J. 1998) .................. 14

*In re Thompson Medical Co*., 104 F.T.C. 648, 816 (1984), *aff'd*, 791 F.2d 189 (D.C.Cir.1986).. 6,
    11

*In the Matter of International Harvester Co*., 104 F.T.C. 949 (1984) ..................................... 19, 27

*Koewing v. Town of West Orange*, ,  89 N.J.L. 539 , 99 A. 203 (.E.& A. 1916)......................... 28

*Kugler v. Romain*, 58 N.J. 522, 279 A.2d 640 (1971) .......................................... 16, 20

*Lemelledo v. Beneficial Management Corp. of Am.*, 150 N.J. 255, 696 A.2d 546 (1997) ........... 14

*Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 774 A.2d 674(App. Div. 2001) ...................... 19, 21

*Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 251, 851 A.2d 62, 69 (App. Div.2004) ........ 6, 16

*Maniscalco v. Brother International Co.*, 627 F.Supp.2d 494 (D.N.J. 2009) ............................. 21

*Matter of New Jersey State Bd. of Dentistry*,  84 N.J. 582, 423 A.2d 640 (1980)...................... 28

*MDC Inv. Property, L.L.C. v. Marando*,  44 F.Supp.2d 693, 699 (D.N.J. 1999) ......................... 6

*Miller v. American Family Publishers,* 284 N.J.Super. 67, 663 A.2d 643 (Ch. Div.  1995). 15, 16, 21

*Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977) ......................... 4

*Myers v. MedQuist, Inc.*, 2006 U.S. Dist. LEXIS 91904 (D.N.J. Dec. 20, 2006) ....................... 30

*National Sur. Corp. v. Midland Bank*, 551 F.2d 21 (3d Cir.1977) ............................................. 12

*New Castle County, Del. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338 (3d Cir. 1999) ...................................................................................... 12

*New Jersey Builders Ass'n v. Borough of Mendham*, 263 N.J. Super. 88, 621 A.2d 985 (App. Div. 1993) ................................................................................................ 27

*Novartis Corp. v. FTC*, 223 F.3d 783 (2000)................................................................................ 11

*Pronational Ins. Co. v. Shah*, No. 07-1774, 2007 WL 2713243, *1 (E.D. Pa. Sept.17, 2007........ 5

*Realty Asset Properties, Ltd. v. Township of Millstone*, 2006 WL 3456490, 3 (N.J.Super.App .Div. 2006) ...................................................................................... 27, 28

*Rickenbach v. Wells Fargo Bank, N.A.*, 635 F.Supp.2d 389 (D.N.J. 2009) ................................ 25

*Royale Luau Resort, LLC v. Kennedy Funding, Inc.,*  2008 WL 482327 (D.N.J. 2008).............. 29

*Smith v. Hudson County Register*, 411 N.J. Super. 538, 988 A.2d 114 (App. Div. 2010) ........... 25

*Sobel v. The Hertz Corp.*, 2010 WL 1006882 4 (D. Nev. 2010) ................................................. 28

*St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*,  2005 WL 1199045(D.N.J. 2005) . 29

*T. I. McCormack Trucking Co. v. U.S.*, 251 F. Supp. 526 (D.N.J. 1966) .................................... 11

*Taylor v. JVC Americas Corp.*,  2008 WL 2242451 (D.N.J. 2008)................................. 13, 29, 30

*Titan Stone, Tile & Masonry, Inc. v. Hunt Constr. Group, Inc.*, 2006 U.S. Dist. LEXIS 70569 (D.N.J. Sept. 26, 2006) .............................................................................. 30

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519 (1994) ....................................... 29

*Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254 (3d Cir. 2007) ................................................. 15

*West Caldwell v. Caldwell*, 26 N.J. 9, 24-25, 138 A.2d 402, 410 (1958)...................................... 6

iii

**Other Authorities**

CJS CONTRACTS § 42 (Westlaw  Ed.) .................................................................... 27

CJS PAYMENT § 107 (Westlaw ed.) ..................................................................... 25

*Model Jury Charge (Civil)* 4.43, Consumer Fraud Act at 5 (9/09) .............................. 16

Restatement (Second) of Torts § 538 ................................................................... 6

**Rules**

*Fed. R. Civ. P.* 8 (d) (2) .................................................................................. 20

*Fed. R. Civ. P.* 9(b) ....................................................................................... 21

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Dwight Simonson ("Plaintiff"), individually and on behalf of all others similarly situated, hereby files his Response and Brief in Opposition to Motion to Dismiss [DE 11] filed by Defendants The Hertz Corporation ("Hertz"), American Traffic Solutions, Inc. ("ATS") and PlatePass, L.L.C. (collectively, "Defendants"), and in support Plaintiff states as follows:

### I.       Summary of the Argument

Defendants base every contention of their motion on a premise which is fundamentally flawed: They assert that the Hertz rental contract expressly, clearly, and unambiguously spells out <u>all</u> terms and conditions of the Hertz "PlatePass" program ("PlatePass") and thus provides renters like Plaintiff and Class Members with "full knowledge of the facts;" evidences that they "voluntarily paid" PlatePass administrative fees and obviates any claim they are deceived. This proposition is neither true nor an accurate depiction of Plaintiffs' suit or the defendants' contract. This flawed premise negates every point Defendants make.

As Plaintiff alleges, the Hertz rental contract at best only purportedly authorizes Hertz to release rental and charge card information to its "designated vendor, [Defendant] American Traffic Solutions" ("ATS") for the purpose of

processing certain charges.  However, the contract nowhere provides for the terms

and conditions by which Plaintiff and Class Members *agree to incur* toll or non-

quantified and excessive traffic-related administrative charges in the first place.

Defendants fail to address Plaintiffs' allegation that the Hertz contract uniformly,

affirmatively and unambiguously lists all charges renters   incur *except* for

PlatePass fees.  [DE 1 at ¶ 79][1]  According to Plaintiff's Complaint, no term of the

contract contained any statement of the existence, amount or inclusion of the

PlatePass administrative fee in the rental charge.   The contract does not even name

or define PlatePass or the PlatePass program.   Under New Jersey law, the price

term of a contract is material and essential.  Without it or the terms and conditions

for incurring PlatePass charges, there is no legal authorization for Defendant to

impose the PlatePass charge or any fees they claim are associated with it.

Defendants also draw distinctions between omissions and affirmative

representations under the New Jersey Consumer Fraud Act ("NJCFA") and

characterize Plaintiff's Complaint as an omissions case in an effort to have this

Court dismiss Plaintiff's Complaint for failure to allege the requisite scienter.  The

syllogism Defendants espouse is that since the rental agreement is clear, there can

be no claim of knowledge of a material omission or intent to induce reliance on

---

[1]      The citation and symbol "[DE __ ]" denotes the pertinent docket entry in the
trial court's record.  The citation "DE at ___" indicates the page number appearing
at the bottom of the docketed material.  The citation "DE, n __" refers to a footnote
in the docketed filing.

any omission on Defendants' part.  This argument also fails. Defendants entirely ignore Plaintiff's specific, detailed allegations that Defendants uniformly *and knowingly* do not and did not disclose to Hertz rental customers, including Plaintiff and Class Members, in their rental agreements, or in or on other point-of-sale materials, the following material facts: (1) PlatePass is automatically activated for their rented vehicles; (2) by contracting to rent cars from Hertz, Plaintiff and Class Members become enrolled as paying subscribers to PlatePass automatically without any agreement and as such automatically incur PlatePass administrative fees; and (3) in addition to the toll charge, customers who rent PlatePass-enabled cars are automatically required to pay an administrative or "service" fee of $2.50-$3.00 per rental day even for days customers do not use PlatePass.

Likewise, based on the purported clarity of the rental contract language, Defendants further maintain that since there is a valid, enforceable contract for PlatePass charges, there can be no claim for unjust enrichment.  But, Defendants here again miss the whole point of this case: the administrative charges for PlatePass are <u>not</u> authorized; <u>no</u> agreement to incur them exists; and the agreement does <u>not</u> mention PlatePass or any costs it will charge from plaintiff or similarly situated renters.  In other words, PlatePass charges are <u>not</u> part of the contract between the parties.  Therefore, Plaintiff has alternatively pled there is no valid, enforceable agreement authorizing PlatePass charges or authorizing ATS or

PlatePass LLC to impose those charges. Even if the PlatePass charges were somehow covered in the allegations contained in the Complaint, the Federal Rules of Civil Procedure allow pleading in the alternative.  At this juncture it would be premature for the Court to adjudicate the viability of Plaintiff's unjust enrichment claim without discovery on the validity and exact scope of the Hertz rental agreement, which completely fails to mention the terms and conditions concerning the PlatePass program and identify the Defendants, ATS and PlatePass, L.L.C.

In light of the foregoing points and the detailed explanation of them which follows, Defendants' objections to Plaintiff's Complaint should be overruled and their Motion to Dismiss should be denied.

## II.   The Legal Standard for Motions to Dismiss

Defendants move to dismiss Plaintiff's Complaint based on Rule 12(b) (6), *Fed. R. Civ. P*. [DE 11-3 at 21].  Motions to dismiss under this rule result in a determination of the merits at an early stage of the case. *Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 512 (D.N.J. 2008) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)).  "As a result, 'plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn.'" *Dewey,* 558 F.Supp.2d 505, 512 (quoting *Mortensen* at 891)  In order to survive a 12(b) (6) motion to dismiss, '"[t]he plaintiff must allege facts sufficiently detailed to 'raise a right to relief above the speculative level,' and

4

must 'state a claim to relief that is plausible on its face.'" *Dewey* at 512 (quoting *Pronational Ins. Co. v. Shah*, No. 07-1774, 2007 WL 2713243, *1 (E.D. Pa. Sept.17, 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "At this stage, the Court must determine whether the complaint 'contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.' *Dewey* at 512 (quoting *Haspel v. State Farm Mut. Auto. Ins. Co*., 241 Fed.Appx. 837, 838 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. 544, 562).  As set forth below, Plaintiff has alleged all material elements of his contract and deceptive trade practice claims; Defendants' "voluntary payment doctrine" is inapplicable; and as an alternative theory or in its own right, the unjust enrichment allegations Plaintiff plead may co-exist in the same pleading with Plaintiff's contract claim.

### III.   Argument

**A.   PLAINTIFF'S COMPLAINT ADEQUATELY ALLEGES PLAINTIFF AND CLASS MEMBERS DID NOT BARGAIN FOR PLATEPASS ADMINISTRATIVE FEE CHARGES, WHICH ARE MATERIAL.**

#### 1.   Price and Rate Terms are Material Contract Terms

Under New Jersey law, "'[a] contract arises from offer and acceptance, and must be sufficiently definite so 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Baer v. Chase*, 392 F.3d 609, 618 - 619 (3d Cir. 2004) (quoting and collecting New Jersey cases) A contract "is

unenforceable for vagueness when its essential terms are too indefinite to allow a court to determine with reasonable certainty what each party has promised to do." *Baer supra* at 619 (citing *West Caldwell v. Caldwell*, 26 N.J. 9, 24-25, 138 A.2d 402, 410 (1958) To be enforceable as a contractual undertaking, an agreement must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty.") (citations omitted)

"New Jersey law deems the price term…an essential term of any contract." *Baer*, 392 F.3d 609, 619 (citation omitted); *see MDC Inv. Property, L.L.C. v. Marando*, 44 F.Supp.2d 693, 699 (D.N.J. 1999). An analogous principal is firmly established in the law of deceptive trade practices regarding what information is "material." "Information concerning prices or charges for goods or services is material, as it is 'likely to affect a consumer's choice of or conduct regarding a product.'" *F.T.C. v. Crescent Pub. Group, Inc.*, 129 F.Supp.2d 311, 321 (S.D.N.Y. 2001) (citing *In re Thompson Medical Co.*, 104 F.T.C. 648, 816 (1984), *aff'd*, 791 F.2d 189 (D.C.Cir.1986); *FTC v. Cyberspace.com, LLC*, 453 F. 3d 1196, 1201 (9th Cir. 2006) (quoting *In re Cliffdale Assocs., Inc.*,103 F.T.C. 110, 165 (1984); *accord Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 251, 851 A.2d 62, 69 (App. Div.2004) (construing the New Jersey Consumer Fraud Act ["NJCFA"] and quoting Restatement (Second) of Torts § 538(2) (1977) to the effect that "[a]

statement is material if: (a) a reasonable person would attach importance to its existence in determining a choice of action ...")

### 2.     The Hertz Rental Contract Omits Material Terms Relating to PlatePass Administrative Charges

As a matter of course, Hertz requires car rental customers to execute standardized rental contracts it drafts, which purport to spell out all terms, charges and conditions of the rental arrangement. [DE 1 at ¶ 23]  These agreements are pre-printed contracts of adhesion and customarily include a per-day rental price (including all actual and potential fees and charges) and indications of the types of services the renter has chosen. [*Id.*]; *see Gamble v. Connolly,* 399  N.J. Super. 130, 142 943 A.2d 202, 209 (App. Div. 2007) (defining contract of adhesion as "a contract where one party must accept or reject the contract") (citations omitted) The Hertz rental agreement, attached as Exhibit A ["Ex. A"] to Plaintiff's Complaint [DE 1], prominently and in bold-face type contains in pertinent part the following terms and conditions with respect to the price and rate terms of the rental transactions of Plaintiff and Class Members:

> **You agree to pay charges at the rates and in the amounts that appear on the left of the table below** [emphasis in original]…
> Our estimates of Your total charges appear on the right of the table below…You will *not* [emphasis added]
> incur any charges that either are listed below opposite ***
> or cannot be calculated until return. If any of these
> assumptions is incorrect, additional charges or

charges at higher rates may apply.

[DE 1, Ex. A, at 27 of 29].  After this introductory paragraph on rates and charges, the Hertz rental contract contains a table listing various potential charges (marked by ***) and actual charges, including, but not limited to, charges deemed "Extra Charges," "Assessments/Fees/Taxes," "Optional Services," and "Other Fees and Assessments." [*Id*. at 27-28].  At that bottom of this listing, the contract sets forth a total amount to be charged to the renter's credit card. [*Id*. at 29]  The PlatePass charges and amounts of any associated administrative fees **do not** appear in this statement of the charges renters will actually *or* potentially incur and agree to pay. [DE 1, Ex A]    Instead, after the total rental price is listed, the rental contract contains the following language, in plain, un-emboldened block text:

> You authorize us to release your rental and charge card information to our designated vendor, American Traffic Solutions for the exclusive purpose of processing and billing tolls, parking or traffic violation fines and penalties and related administrative fees incurred during the term of your rental.

[DE 1 at ¶ 34; Ex. A at 29].

Defendants argue throughout their Motion to Dismiss that this latter paragraph "plainly and unambiguously entitled defendants to 'to release [plaintiff's] rental and charge card information to our designated vendor, American Traffic Solutions for the exclusive purpose of processing and billing

tolls…[etc.]'"[DE 11-3 at 12]   "That the defendant did so [Defendants conclude] constitutes performance of the contract, *not breach*." (*Emphasis added*)

But, Defendants' observation that they fully complied with the contract which purportedly unambiguously allowed the transfer information of to ATS totally misses the whole point of Plaintiff's Complaint: As a precondition for Plaintiff and Class Members to incur PlatePass-related fees and charges, the rental agreement must first unambiguously delineate the terms and conditions and circumstances associated with these material contract terms and clearly evidence that renters must have agreed to them. Plaintiff complains the Hertz rental contract does neither. The breach-of-contract claim Plaintiff asserts is that "Plaintiff and Class Members did not bargain for the PlatePass service or to pay PlatePass administrative fees.   PlatePass is no where mentioned in the agreement and the Plaintiff and Class members were not informed of the terms of the PlatePass service [in the first place] including its cost, until after charges were incurred." [DE 1 at ¶ 69]   Specifically, Plaintiff alleges the rental contact fails to identify and set forth material PlatePass-related terms and conditions as follows:

> [T]he Hertz rental contract presented to and signed by Plaintiff and Class Members did not and does not: a. Identify PlatePass; b. State, explain, or provide that PlatePass is automatically activated for Plaintiff and Class Members' rented vehicles; c. State, explain or provide that by contracting to rent cars from Hertz, Plaintiff and Class Members automatically become enrolled as paying subscribers to PlatePass and must pay PlatePass administrative fees; or, d. State, explain or provide that, in addition to the toll charge, customers who

rent PlatePass-enabled cars are automatically required to pay an administrative or "service" fee of $2.50-$3.00 per rental day even for days customers do not use PlatePass.

[*Id*. at ¶ 70]   The Complaint continues:

In light of the foregoing, Hertz's rental contracts with Plaintiff and Class Members did not and do not authorize or allow for Hertz's transmission of its customers' personal and financial information to ATS and PlatePass or imposition and collection of PlatePass administrative fees from Plaintiff and Class Members. Accordingly, Defendants, acting individually and in concert, breached the rental contracts of Plaintiff and Class Members.

[*Id*. at ¶ 71]

In its Motion, Defendants entirely fail to address, identify and discuss the foregoing omitted terms and conditions and focus instead exclusively on the purported clarity of the clause mentioning the release of credit card information to ATS. [*See, e.g*., DE 11-3 at 11-13; 15-16, 18-20]  Defendants never address the precise language of the rental contract which expressly states all actual *and potential* charges renters agree to pay are listed and contained in certain tables neither of which contain any mention of PlatePass or its fees.  Given (as Plaintiff avers) that PlatePass is automatically activated and PlatePass administrative fees are charged on every rental transaction once activated [DE 1 at ¶¶ 3-4, 31-32, 38, 78], Defendants were certainly aware of the potential for and amount of any PlatePass administrative fees and could easily have (but did not) disclose them in their comprehensive table which listed, among other actual and potential charges,

"Extra Charges," "Assessments/Fees/Taxes," "Optional Services," and "Other Fees and Assessments."  That Defendants expressly delineated fees and charges in their rental agreement and emboldened text concerning a renter's agreement to them demonstrate Defendants believed fees and charges associated with their rentals were material.  *Cf. FTC v. Wilcox*, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) (express commercial statements are presumptively material); *see also Novartis Corp. v. FTC*, 223 F.3d 783, 786 (2000)(citing *In re Cliffdale Assocs., Inc.*,103 F.T.C. 110, 103 (1984)); *Thompson Medical Co., Inc.*, 104 F.T.C. 648, 816 (1984), *aff'd,* 791 F.2d 189 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987).

### 3.   The Doctrine of Last Antecedents Belies Defendants' Contentions that the Hertz Rental Contract Clearly Authorizes Defendant to Imposes PlatePass Administrative Fees

Moreover, the paragraph regarding transmittal of credit-card information to ATS upon which Defendants rely so heavily is on its face unclear when analyzed under principals of basic contract interpretation.  Under the "'doctrine of last antecedent'…'qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote.'" *Elliot Coal Min. Co., Inc. v. Director, Office of Workers' Compensation Programs*, 17 F.3d 616, 629 (3d Cir. 1994) (citations and quotations omitted); *see T. I. McCormack Trucking Co. v. U.S.*, 251 F. Supp. 526, 532 -533 (D.N.J. 1966).  The "use of a comma to set off a modifying phrase from

11

other clauses indicates that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrase." *Elliot Coal Min. Co., Inc.,* at 630 (citing *National Sur. Corp. v. Midland Bank*, 551 F.2d 21, 34 (3d Cir.1977) As a corollary, lack of a comma limits application of the qualifying language to the word or phrase immediately preceding it. *See New Castle County, Del. v. National Union Fire Ins. Co. of Pittsburgh, Pa*., 174 F.3d 338, 349 n 10 (3d Cir. 1999)

Here, the above-quoted clause (regarding release of credit-card information to ATS to process tolls and traffic fines) provides that the release is for the "purpose of processing and billing tolls, parking or traffic violation fines and penalties *and related administrative fees incurred during the term of your rental*." (emphasis supplied)  The final modifying phrase, "*and related administrative fees incurred during the term of your rental*," is however <u>not</u> set off by commas.  As a consequence, the doctrine of last antecedents would dictate that the term "and related administrative fees" pertains only to the immediately preceding phrase concerning the payment of "parking or traffic violation fines and penalties" and not as Defendants contend to the entire series including the more remote phrase, "processing and billing tolls."

In other words, as a matter of ordinary contract interpretation, the transfer of credit-card information to ATS would only or could reasonably only be construed

under the "doctrine of last antecedents" to result in the imposition of administrative fees relating to "parking or traffic violation fines and penalties."   Along these same lines, the reference to "administrative fees" on its face arguably appears to be more consistent with the payment of extra fees or charges to a governmental entity for fines and penalties, than to a private entity like ATS.  The Hertz rental contract does not define "administrative fees" or ever even reference PlatePass.   These deficiencies in the contract language further support Plaintiff's allegations that the Hertz rental contract clearly neither constitutes a bargained-for agreement on PlatePass administrative charges (*i.e.*—a material price term), nor constitutes an authorization for Defendants to impose those material terms and charges on Plaintiff and Class Members.  Accordingly, Defendants' challenge to Plaintiff's breach-of-contract claim based on the supposed clarity of their authorization to transfer credit-card information to ATS is misplaced and must fail.

**B.   PLAINTIFF PROPERLY ALLEGES "UNLAWFUL PRACTICES" UNDER THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")**

**1.   The NJCFA is Interpreted Liberally to Effectuate its Remedial Purposes**

"A court adjudicating a [NJ]CFA claim must approach dismissal of said claim 'with hesitation.'" *Taylor v. JVC Americas Corp.*,  2008 WL 2242451, 4 (D.N.J. 2008) (quotations and citations omitted)   As this Court has discerned, the NJCFA "is one of the strongest consumer protection statutes in the nation" and

13

"similar to other remedial legislation, the [New Jersey Legislature has expressed that the NJ]CFA should be construed liberally in favor of consumers." *In re National Credit Management Group, L.L.C.* 21 F.Supp.2d 424, 448 (D.N.J. 1998) (citing *Cox v. Sears Roebuck*, 138 N.J. 2,  647 A.2d 454 (1994); *Lemelledo v. Beneficial Management Corp. of Am.*, 150 N.J. 255, 696 A.2d 546 (1997) (other citations omitted)   "The [NJ]CFA is intended to protect the public even when a merchant acts in good faith*." In re National Credit Management Group, L.L.C.* 21 F.Supp.2d at 449 (citation omitted).   "'Given that '[t]he fertility of [human] invention in devising new schemes of fraud is so great ...,' the [NJ]CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out [consumer] fraud in its myriad, nefarious manifestations.'" *Id.* (quotation omitted)

### 2.     The Elements of a Claim under the NJCFA

The elements of a NJCFA claim are: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. *Carton v. Choice Point, Inc.,* 482 F.Supp.2d 533, 535 (D.N.J. 2007) (citation omitted).   An "unlawful practice" is broadly defined in *N.J.S.A.* 56:8-2 of the NJCFA and quoted in Plaintiff's Complaint [DE 1 at ¶ 75]; the definition reads in relevant part:

14

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

Based on the above-quoted text of the NJCFA, courts have held an "unlawful practice" may arise from: (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation, which occurs prior to or after a transaction has taken place. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350 (1997) (defining unlawful practices); *Miller v. American Family Publishers,* 284 N.J.Super. 67, 75, 663 A.2d 643, 647  (Ch. Div.  1995) (same); *Weiss v. First Unum Life Ins. Co*., 482 F.3d 254, 266 (3d Cir. 2007) (finding the "unlawful practices" may appear in the initial sale and/or performance of a contract)  Whether based on an affirmative act or omission, a NJCFA violation may be shown "even though no one was misled or deceived as a result." *Byrne v. Weichert Realtors*, 290  N.J.Super. 126, 136, 675 A.2d 235, 240 ( (App. Div. 1996) (citation omitted)

"Affirmative acts" include an "unconscionable commercial practice," "deception," and "misrepresentation." *Miller,supra,* 284 N.J. Super. at 75, 663 A.2d at 647.  An "unconscionable commercial practice"'implies lack of good faith,

honesty in fact, and observance of fair dealing,' whereby 'unconscionability' is 'designed to establish a broad business ethic.'" *King's Choice Neckwear, Inc. v. Fedex Corp.* 2007 WL 4554220, 6 (D.N.J.,2007) (citing *Cox*, 138 N.J. 2, 647 A.2d 454 and *Kugler v. Romain*, 58 N.J. 522, 279 A.2d 640 (1971)); *compare Model Jury Charge (Civil)* 4.43, Consumer Fraud Act at 5 (9/09) (citing *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J.Super. 11, 29, 501 A.2d 990 (App.Div.1985)) (defining "unconscionable commercial practice"as "an activity in the public marketplace, which is basically unfair or unjust, which materially departs from standards of good faith, honesty in fact and fair dealing.  To be unconscionable, there should be factual dishonesty and a lack of fair dealing").  "Affirmative acts do not require a showing of knowledge of the falsity of the misrepresentation, negligence," or intent. *Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 251,  851 A.2d 62, 69 (App Div.  2004) (*citations omitted*)  Material omissions, on the other hand, as Defendant mentions, require allegations and ultimately proof that "the defendant acted knowingly, with intent that another rely on such concealment, suppression, or omission." *Miller,* 284 N.J. Super. 67, 75, 663 A.2d 643, 647; [DE 11-3 at 14]

### 3. Plaintiff Adequately Pleads Knowledge and Intent under the NJCFA

In challenging Plaintiff's consumer-protection claim under *N.J.S.A.* 56:8-1 *et seq.* (the NJCFA), Defendants harp on their premise that the rental contract "expressly authorizes" and "expressly states" defendants were authorized to charge toll-related administrative fees" [DE 11-3 at 15, 18]   As a result, Defendants argue that Plaintiffs failed to plead and cannot plead a material omission (an "unlawful practice" under the NJCFA) concerning the fees under the NJCFA with the required knowledge and intent.  [*Id.* at 15-16, 18]   This conclusion is wrong for at least three reasons.

### a. The Language of the Hertz Rental Contract Does Not Contradict Plaintiff's Claims

First, in support of their view, Defendants cite a series of cases holding that NJCFA claims are untenable when they are directly and clearly contradicted by the terms of an express agreement or other relevant documents.  *See, e.g., Hassler v. Sovereign Bank*, 644 F.Supp.2d 509, 515 (D.N.J. 2009), *aff'd* , 2010 U.S. App. LEXIS 5445 (3d Cir. 2010) (NJCFA claim based on posting order of bank debits "unequivocally belied by the plain terms of the parties' Agreement"---court finding it difficult for defendant to have disclosed the charges "in clearer or more understandable terms"); *Delaney v. American Express Co.*, 2007 WL 1420766, 7 (D.N.J. 2007) (NJCFA claim dismissed because annuity documents "contained the

very information that Plaintiffs allege was misrepresented, suppressed, or concealed").  In marked contrast to these cases, here Plaintiff alleges that the Hertz rental agreement never mentions PlatePass [DE 1 at ¶¶ 3-4, 33] and never includes or discloses the following material terms: (1) PlatePass is automatically activated for rented vehicles; (2) by contracting to rent cars from Hertz, Plaintiff and Class Members automatically become enrolled as paying subscribers to PlatePass and thereby automatically incur PlatePass administrative fees if they go through a toll both or facility enabled for electronic toll collection; and (3) in addition to the toll charge, customers who rent PlatePass-enabled cars are automatically required to pay an administrative or "service" fee of $2.50-$3.00 per rental day even for days customers do not use PlatePass to pay a toll.  [DE 1 at ¶¶ 3, 31, 35, 70, 78]  Tellingly, Defendant has not cited a single portion of the Hertz rental contract which references these terms.   Hence, the Hertz rental contract in no way contains the "very information" Plaintiff contends was misrepresented or omitted and that information is not in any sense "unequivocally belied by the plain terms of the" Hertz rental agreement.  Defendants' arguments about the clarity of the Hertz rental agreement cannot defeat Plaintiff's breach-of-contract claim, and likewise they cannot derail Plaintiff's NJCFA claim.

### b.    Plaintiff May Plead More Than One Theory of Liability Under the NJCFA

Second, Defendant misstates that Plaintiff must plead only one form of "unlawful practice." [See DE 11-3 at 15-18]   While NJCFA appears to distinguish between affirmative acts of deception or unconscionable acts on one hand, and material omissions on the other, this distinction is elusive.  *See Chattin v. Cape May Greene, Inc*.,  124 N.J. 520, 527, 591 A.2d 943, 947 (N.J. 1991) (concurring opinion). For example, deception can involve outright false representations or a representations that may be misleading because they are only half-true and material information is omitted necessary to prevent "affirmative statements from creating a misleading impression." *See In the Matter of International Harvester Co*., 104 F.T.C. 949 n 25 (and accompanying textual material) (1984) . This scenario presents a mixture of representations and omissions which can be characterized as deception, rather than "pure omission." *Id*.   Along these lines, Plaintiff has alleged that by making affirmative representations in the Hertz rental agreement that it discloses all charges that the renter would incur, but omitting any mention of the PlatePass administrative fee, Defendants have misrepresented the amounts the renter would be charged in violation of the NJCFA. [DE 1 at ¶ 79]. *Accord, Leon v. Rite Aid Corp*., 340 N.J. Super. 462, 471, 774 A.2d 674 (App. Div. 2001) (finding

NJCFA violation based on undisclosed pricing policies in the context of merchant's affirmative "best and lowest price" representations)

Furthermore, under basic rules of pleading and statutory interpretation, any one of the "unlawful practices" stated in the NJCFA—"unconscionable commercial practices," "deception" or "omissions of material fact"—or several of them—can legitimately serve as the basis for counts alleging NJCFA violations. *See Cox,* 138 N.J. at 18-19, 647 A.2d at 462 (N.J. 1994) (noting terms of the statute are stated in the disjunctive); *see also Fed. R. Civ. P.* 8 (d) (2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones…If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.")   Plaintiff's Complaint, therefore, in addition to other allegations of "unlawful practices" based on material omissions, permissibly includes allegations: (1) that Defendants committed misrepresentation by stating that all actual and potential fees were disclosed but omitting charges for PlatePass [DE 1 at ¶ 79]; and (2) that Defendants committed "unconscionable commercial practices" under the NJCFA where their "conduct regarding PlatePass services and fees lacked honesty in fact, fair dealing and good faith or because it had the capacity to mislead consumers acting reasonably." [*See* DE 1 at ¶ 77]; s*ee also, Cox, King's Choice, Kugler, and*

*D'Ercole Sales, supra* (setting forth the standards for "unconscionable commercial

practices" under the NJCFA)

> **c.     Plaintiff Clearly Alleges the Knowledge and Intent Elements
> for NJCFA Violations Based on Material Omissions of Fact**

Third, "[t]he statutory and regulatory scheme [contained in the NJCFA]

is…designed to promote the disclosure of relevant information to enable the

consumer to make intelligent decisions in the selection of products and services."

*Leon*, 340 N.J. Super. at  471, .774 A.2d  at 679.   As stated above, a claim for

omission of material facts under the NJCFA requires allegations and ultimately

proof that "the defendant acted knowingly, with intent that another rely on such

concealment, suppression, or omission."  *Miller,* 284 N.J. Super. at 75,. 663 A.2d

at 647.  The Federal Rules of Civil Procedure provide that knowledge and intent

may be alleged generally. *Maniscalco v. Brother International Co.*, 627 F.Supp.2d

494, 500 (D.N.J. 2009) (citing *Fed. R. Civ. P*. 9(b))  "A person acts knowingly

with respect to the nature of his conduct or the attendant circumstances if he is

aware that his conduct is of that nature, *or that such circumstances exist*, or he is

aware of a high probability of their existence."  *N.J.S.A*. 2C:2-2 (b) (2) (emphasis

supplied)   Intent means the state of mind or determination to do a specific act.  *See*

Black's Law Dictionary (8th ed. 2004)  (defining "intent"); *compare Model Jury

Charge (Civil)* 4.43, Consumer Fraud Act at 10 (9/09).

Here, Defendants entirely overlook the allegations Plaintiff makes concerning the circumstances of his omission claim under the NJCFA and Defendants' knowing omissions of material fact with the intent to induce reliance. According to the Complaint, Hertz is the "world's largest general use car rental brand." [DE 1 at ¶ 22]   Plaintiff's Complaint recounts the multi-year history of Defendants' extensive implementation of PlatePass around the country eventally growing to such an extent that every Hertz rental car is automatically pre-enrolled and enabled to use the PlatePass system without any individual commitment or contract required on the consumer's part to use or incur charges for PlatePass. [DE 1 at ¶¶ 4, 10, 24-28, 29]   Plaintiff alleges the PlatePass program has empowered Defendants to systematically and automatically impose PlatePass administrative fees on Plaintiff and Class Members across the U.S., under circumstances when no reasonable consumer could or would know the PlatePass system is pre-activated and that they will automatically incur PlatePass administrative fees even for days they do not use toll roads. [*Id.* at ¶¶ 3-4, 31- 32, 35, 38, 46, 69-70, 78]

The Complaint also alleges that all Hertz customers are required to execute standardized rental contracts Defendants draft. These contracts clearly state, in bold print, that the agreement itself spells out all actual and potential fees of the rental arrangement in a particular table. [DE 1 at ¶¶ 22-23, 79; Ex. B]   Defendants thereby intend that the Hertz rental-contract rates and charges stated therein are

material and are to be relied upon where and when they expressly direct customers'
attention to them as well as because (as Plaintiff alleges) that information,
objectively viewed, would likely affect a reasonable consumer's choice of whether
to rent from Hertz or not (which makes it material as a matter of law).  [DE 1 at ¶¶
44-46; Ex. B]   Despite the foregoing, and as set forth in the Complaint, the Hertz
rental contract entirely fails to state the terms and conditions under which rental
customers incur PlatePass charges. [*Id*. at ¶¶ 3-4, 31, 33, 35, 38, 46, 68-70, 78-79;
Ex. A]

Against the backdrop of these facts, Plaintiff specifically alleges
"Defendants have uniformly …and *knowingly* omitted *material* facts regarding
PlatePass…from [customers'] rental agreements or on other point-of-sale
materials, [including] that:

> PlatePass is automatically activated for their rented vehicles; (2) by
> contracting to rent cars from Hertz, Plaintiff and Class Members
> automatically become enrolled as paying subscribers to PlatePass and
> as such automatically incur PlatePass administrative fees; and (3) in
> addition to the toll charge, customers who rent PlatePass-enabled cars
> are automatically required to pay an administrative or "service" fee of
> $2.50-$3.00 per rental day even for days customers do not use
> PlatePass.

[DE 1 at ¶ 78] (*Emphasis added*)  The Complaint further states: "Defendants are
and were in a superior position to know" such facts and information, and "such
information is within Defendants' exclusive knowledge and unknown to Plaintiff
and Class Members." [*Id*. at ¶ 45]   And, furthermore, "Defendants made these

omissions *with the intent that consumers rely on their omissions*… [and as such, their conduct violated the NJCFA." [DE 1 at ¶ 78 (*emphasis added*).]

Accordingly, in light of Rule 9 (b)'s mandate that allegations of knowledge and intent may be averred generally, and the maxim that the NJCFA be construed liberally, Plaintiff has more than sufficiently pled the knowledge elements under the NJCFA.

## C.   DEFENDANTS CANNOT INVOKE THE VOLUNTARY PAYMENT DOCTRINE

### 1.   Plaintiff Did Not Have "Full Knowledge of the Facts" and Payment of the PlatePass Administrative Fee Was Not "Voluntary" Because It Was The Result of Deception

Defendants try to invoke the common-law "voluntary payment doctrine" to avoid liability for Plaintiff's claims. According to Defendants, Plaintiff's payment of the PlatePass administrative fees was "voluntary" because the Hertz rental agreement clearly authorized the charges.  Like their other challenges, Defendants' challenge again fails because its underlying premise is flawed. Defendants assert Plaintiff transacted his rental charges without influence of fraud and with "full knowledge of all of the facts" [DE 11-2 at 6-7]. This premise, however, directly

contradicts the allegations of the Complaint, which for purposes of Defendants'

present Motion to Dismiss are presumed true. [2]

"It is essential to a voluntary payment that the payor must have had the

freedom of exercising his or her will, and must have acted with full knowledge of

all the facts." CJS PAYMENT § 107 (Westlaw ed.; internal *footnotes omitted*) "To

be voluntary, a payment must be made with knowledge that there is no" obligation

to pay. *Smith v. Hudson County Register*, 411 N.J. Super. 538, 553, 988 A.2d 114,

123 (App. Div. 2010). This requirement is not satisfied under the circumstances

pled in this case.  As set forth above, Plaintiff incurred the PlatePass administrative

fees through Defendants' deception and material omissions.  Plaintiff expressly

alleges he paid the administrative fee charges, "unaware of the facts and

circumstances surrounding the imposition of the PlatePass fee and that Defendants

had no legal right to collect PlatePass administrative fees [and that] [h]ad he

previously known about the PlatePass fees, he would have not incurred or paid the

charges or rented from Hertz." [DE 1 at ¶ 43]   Defendants do not discuss this

allegation, or the many specific allegations in the Complaint to the effect that

Defendants by omitting the materials facts cited above, "[d]eprived Hertz

customers of material facts and information [concerning PlatePass Fees], which

---

[2]   We note this Court has held " the [voluntarily payment ] rule raises questions
of fact that cannot be resolved at [the motion-to-dismiss] stage." *Rickenbach v.
Wells Fargo Bank, N.A*., 635 F.Supp.2d 389, 395 (D.N.J. 2009).

would likely affect their decisions whether to rent vehicles from Hertz or their abilities to make intelligent and meaningful choices between or among Hertz and other rental car companies." [*Id*. at ¶ 46]

### 2.     Defendants Cannot Parse Payment of PlatePass Administrative Fees from the Underlying Rental Transaction

To support their voluntary-payment defense, Defendants also attempt to separate Plaintiff's payment of the administrative fee to ATS from the unlawful practices Plaintiff alleges relating to the lack of disclosure in the Hertz rental car contract.  They do this to demonstrate the payment was not unlawfully induced and voluntary. [DE 11-3 at 9]   However, this distinction is illogical. Plaintiff could never have incurred and unknowingly paid the PlatePass fees had he known about them when entering the Hertz rental contract.  But for the non-disclosure, Plaintiff would not have incurred and ostensibly been obligated (albeit unlawfully) to pay the fees. By failing to disclose terms and conditions regarding PlatePass administrative charges, Defendants took away Plaintiff's free choice whether or not to incur them or rent from Hertz. It was the misleading, deficient Hertz rental contract and Defendants' material omissions regarding their rental rates and charges which caused Plaintiff to unknowingly incur the PlatePass administrative charges and pay them unwittingly.  An after-the-fact disclosure of those charges (if any meaningful one actually occurred) does not change the fact that the

26

administrative fees were neither agreed to, nor meaningfully disclosed.  And their payment does not and cannot justify or validate the deceptive and unconscionable manner by which Defendants induce or cause customers to incur the fees in the first instance. *Cf. In the Matter of International Harvester Co.*, 104, F.T.C. 949 n 17 (and accompanying textual material) (1984) (noting "the Consumer may also incur injury [by way of deception] through choices relating to their post-purchase conduct" on the theory that prior knowledge of the post-purchase requirements will affect their initial purchase decisions); CJS CONTRACTS § 42 (Westlaw  Ed.) ("Payments made on account of a contract which is void because of indefiniteness will not validate it.")

### 3.    The "Voluntary Payment Doctrine" is Inapplicable in a Consumer Case such as this

Additionally, Defendants never examine the public policy underlying the cases they cite to support their position.  Each of Defendant's New Jersey cases (the first of which dates back to1892) involved payments of license fees or taxes made to a governmental entity.[3]  The New Jersey Supreme Court has identified that

---

[3]       *See, e.g, Realty Asset Properties, Ltd. v. Township of Millstone*, 2006 WL 3456490, 3 (N.J.Super.App .Div. 2006) (real estate taxes); *Continental Trailways, Inc. v. Director, Div. of Motor Vehicles*, , 102 N.J. 526, 548-549, 509 A.2d 769, 781 (1986) (excise taxes); *New Jersey Builders Ass'n v. Borough of Mendham*, 263 N.J. Super. 88, 91, 621 A.2d 985, 986 (App. Div. 1993) (water connection fees); *Matter of New Jersey State Bd. of Dentistry*,  84 N.J. 582, 584 , 423 A.2d 640, 641

the public policy behind the "voluntary payment rule" was to discourage suits for the refund of taxes erroneously paid or illegally collected because of the fiscal budgeting practices and procedures of public entities. *See Continental Trailways, Inc. v. Director, Div. of Motor Vehicles,* 102 N.J. 526, 548-549, 509 A.2d 769, 781 (N.J. 1986); *Realty Asset Properties, Ltd. v. Township of Millstone*, 2006 WL 3456490, 3 (N.J.Super.App. Div.2006) (*citation omitted*). Defendant has not cited a single New Jersey consumer case and analyzed how and why this policy should be extended to consumer contract cases or NJCFA cases. This omission is noteworthy because more recently courts have found that the "voluntary payment doctrine" conflicted with the purposes and policies of protecting consumers and rejected it in the consumer context. *See, e.g., Southstar Energy Services, LLC v. Ellison*, 691 S.E.2d 203, 206 (Ga. 2010) (collecting cases). In fact, defendant Hertz has recently lost a motion to dismiss for this very reason. *See Sobel v. The Hertz Corp.*, 2010 WL 1006882 4 (D. Nev. 2010)   As such, the "voluntary payment doctrine" is not grounds for dismissal.

---

(1980) (state license and registration fees); *Koewing v. Town of West Orange*, ,  89 N.J.L. 539 , 99 A. 203 (.E.& A. 1916) (municipal taxes); *City of Camden v. Green*, 54 N.J.L. 591, 25 A. 357 (E.& A. 1892) (license fees).

## D.   PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS PROPERLY PLED

Finally, Defendants contend that since a unambiguous, valid contract expressly and clearly authorizes the PlatePlass administrative fee a claim for unjust enrichment is impossible.  This contention is misplaced again because Defendants emphasize that the Hertz rental contract (supposedly in their view) expressly and clearly authorizes PlatePass administrative fees and negates all of Plaintiff's allegations. Contrary to the cases Defendants cite,[4] and as thoroughly discussed above, the terms of the Hertz rental contract neither identify the PlatePass program and associated charges and fees, nor contradict Plaintiff's claims. Here defendant PlatePass L.L.C. is not even mentioned in the agreement and defendant ATS is only mentioned as the potential recipient of credit-card information.

Additionally, whether Plaintiff may simultaneously plead both contractual and quasi-contractual causes of action is governed by Federal Rule of Civil Procedure 8(d) rather than state law upon which Defendants rely.[5]  See *Taylor v. JVC Americas Corp.*, 2008 WL 2242451, 8 (D.N.J. 2008)  Rule 8(d) expressly

---

[4]    *St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*,  2005 WL 1199045(D.N.J. 2005) (plaintiff's claims expressly covered and contradicted by contract in commercial transaction—unjust enrichment unavailable); *Royale Luau Resort, LLC v. Kennedy Funding, Inc.,*  2008 WL 482327 (D.N.J. 2008) (same—plaintiff confusingly pled express contract and quasi-contract in same count).

[5]    *See, e.g., VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 552, 641 A.2d 519, 525 (1994); *Goldsmith v. Camden County Surrogate's Office*, 408 N.J. Super. 376 , 975 A.2d 459(App. Div. 2009).

allows alternative pleading in federal court.  Specifically it permits pleading of alternative statements of claims or defenses as well as inconsistent claims or defenses. regardless of consistency.

With respect to unjust enrichment claims, under Rule 8, "[t]his Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature." *MK Strategies, LLC v. Ann Taylor Stores Corp.*  567 F.Supp.2d 729, 736 (D.N.J. 2008) (citing *Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 528-29 (D.N.J.2008); *Titan Stone, Tile & Masonry, Inc. v. Hunt Constr. Group, Inc*., 2006 U.S. Dist. LEXIS 70569, at *18 (D.N.J. Sept. 26, 2006) ("While it is true that some of plaintiff's quasi-contractual or other equitable claims may be dismissed as inconsistent at a later time in these proceedings, it is far too early to do so now."); *Myers v. MedQuist, Inc*., 2006 U.S. Dist. LEXIS 91904, at *28-29 (D.N.J. Dec. 20, 2006)) This has been especially true when, as here, the plaintiff alleges he would not have incurred the original obligation had he known all facts surrounding the contract.  [DE 1 at ¶ 43]; *see In re Prudential Ins. Co. of America Sales Practices Litigation*, 975 F. Supp. 584, 622 (D.N.J. 1996) ("Here, plaintiffs have alleged that Prudential fraudulently induced them to enter purchase contracts which they otherwise would not have entered and that the Court should therefore not enforce them. Taking all facts pleaded in the complaint as true, then, plaintiffs

have adequately plead a claim for unjust enrichment.")   As a consequence, Plaintiff's unjust enrichment claim should survive at this juncture, and Defendant's objections to that count should be overruled.

## IV. Conclusion

For the forgoing reasons, Defendants' Motion to Dismiss should be denied. Should the Court, however, determine there is a pleading inadequacy, Plaintiff respectfully asks for an opportunity to amend to cure any deficiency.

/s/ Michael Coren

Dated: July 3, 2010

Michael Coren, Esq.
COHEN, PLACITELLA & ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701-1717
(732) 747-9003
Attorneys for Plaintiff and the  Putative Class

Of Counsel:

Steven R. Jaffe, Esq.
Mark S. Fistos, Esq.
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820
(Admission *pro hac vice* to be applied for)

Stephen A. Dunn, Esq.
Matthew E. Lee, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 426
Raleigh, North Carolina 27602
(919) 832-0329
(Admission *pro hac vice* to be applied for)

31

## CERTIFICATE OF SERVICE

I, Michael Coren, Esquire, of full age, hereby certify that on July 3, 2010, a true

and correct copy of the forgoing Response and Brief in Opposition to Motion to

Dismiss the Complaint were electronically filed with the United States District

Court, 1 John F. Gerry Plaza, Camden, New Jersey 08101 and served on following

Counsel of Record via the Court's ECF filing system:

MichaelJ. Vassalotti
BROWN& CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
Attorney for The Hertz Corporation, American
Traffic Solutions, Inc. and Platepass, LLC


Date: July 3, 2010

___/s/ Michael Coren_____
Michael Coren, Esq.
COHEN, PLACITELLA & ROTH, PC
Suite 2900
Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 567-3500
mcoren@cprlaw.com
One of the attorneys for Plaintiff and the
proposed class