IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DWIGHT SIMONSON, individually and on behalf of all others similarly situated, | ) Case No. 1:10-cv-01585<br>)<br>) |
| Plaintiff,<br>v. | )<br>)<br>) Judge Noel L. Hillman |
| THE HERTZ CORPORATION, AMERICAN TRAFFIC SOLUTIONS INC., and PLATEPASS, LLC, | )<br>)<br>) Original Motion Day: July 19, 2010 |
| Defendants. | )<br>) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The Hertz Corporation, American Traffic Solutions, Inc., and PlatePass, LLC

Michael J. Vassalotti
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
Tel: (856) 854-8900
Fax: (856) 858-4967

Ross B. Bricker
John F. Ward, Jr.
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel: (312) 222-9350
Fax: (312) 840-7650

# **TABLE OF CONTENTS**

I.   The Voluntary Payment Doctrine Bars Plaintiff's Breach of Contract Claim. .............................................................................................................. 1

II.  Plaintiff Has Not Pleaded A Viable Breach Of Contract Claim. .............................. 6

III. Plaintiff's Consumer Fraud Claim Should Be Dismissed Because Plaintiff Has Pleaded No Facts Demonstrating That Defendants Intended To Deceive Him. .............................................................................................................. 10

IV.  Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because Plaintiff Admits That The Rental Agreement Is Binding And Governs The Parties' Relationship. ............................................................................................... 13

CONCLUSION ............................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................. 12, 13

*Baraka v. McGreevey*,
   481 F.3d 187 (3d Cir. 2007) ............................................................................................ 3

*Bianchi v. Lazy Days R.V. Center, Inc.*,
   No. 06-1979 (MLC), 2007 WL 1959268 (D.N.J. Jul. 5, 2007) ...................................... 13

*Bucciarelli-Tieger v. Victory Records, Inc.*,
   488 F. Supp. 2d 702 (N.D. Ill. 2007) ......................................................................... 13, 14

*Burnstine v. Margulies*,
   87 A.2d 37 (N.J. Super. Ct. App. Div. 1952) .................................................................. 9

*Continental Trailways, Inc. v. Director, Division of Motor Vehicles*,
   509 A.2d 769 (N.J. 1986) ............................................................................................ 2, 5

*Cox v. Sears Roebuck & Co.*,
   647 A.2d 454 (N.J. 1994) ............................................................................................... 10

*CTF Hotel Holdings, Inc. v. Marriott International, Inc.*,
   381 F.3d 131 (3d Cir. 2004) ............................................................................................ 9

*Delaney v. American Express Co.*,
   Civ. No. 06-5134 (JAP), 2007 WL 1420766 (D.N.J. May 11, 2007) .......................... 11

*Flammia v. Maller*,
   169 A.2d 488 (N.J. Super. Ct. App. Div. 1961) .............................................................. 2

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) .......................................................................................... 12

*Gerlinger v. Amazon.Com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ........................................................................... 14

*Harvey v. Nissan North America, Inc.*,
   No. C-12016-04, 2005 WL 1252341 (N.J. Super. Ch. Div. Apr. 29, 2005) ................ 11

*Hassler v. Sovereign Bank*,
   644 F. Supp. 2d 509 (D.N.J. 2009) .................................................................................. 11

*HT of Highlands Ranch, Inc. v. Hollywood Tanning Systems, Inc.*,
   590 F. Supp. 2d 677 (D.N.J. 2008) .................................................................................. 13

*In the Matter of International Harvester Co.*,
   104 F.T.C. 949 (Dec. 21, 1984) ......................................................................................... 4

*In re Tower Air, Inc.*,
   416 F.3d 229 (3d Cir. 2005) .............................................................................................. 3

*Jacobson v. Nicholas*,
   283 P. 684 (Wash. 1930) ................................................................................................... 3

*Monarch Life Insurance Co. v. Senior*,
   No. 06-559(JLL), 2006 WL 3825138 (D.N.J. Dec. 22, 2006) ........................................ 12

*New Paradigm Software Corporation v. New Era Networks, Inc.*,
   107 F. Supp. 2d 325 (S.D.N.Y. 2000) ............................................................................. 14

*Qwest Communications Corporation v. Herakles LLC*,
   No. 2:07-cv-00393-MCE-KJM, 2008 WL 783347 (E.D. Cal. Mar. 20, 2008) ............... 13

*Ramon v. Budget Rent-A-Car System, Inc.*,
   No. 06-1905, 2007 WL 604795 (D.N.J. Feb. 20, 2007) .................................................. 11

*Raybestos-Manhattan, Inc. v. Glaser*,
   365 A.2d 1 (N.J. Super. Ct. Ch. Div. 1976) ...................................................................... 9

*Realty Asset Properties, Ltd. v. Township of Millstone*,
   No. L-908-05, 2006 WL 3456490 (N.J. Super. Ct. App. Div. Dec. 1, 2006) ............ 2, 5

*Riker v. Jersey City*,
   38 N.J.L. 225 (N.J. Sup. Ct. 1876) .................................................................................... 5

*SMC Corp. v. Peoplesoft USA, Inc.*,
   No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641 (S.D. Ind. Oct. 12, 2004) .................. 14

*Smith v. Hudson County Register*,
   988 A.2d 114 (N.J. Super. Ct. App. Div. 2010) ................................................................ 5

*Sobel v. The Hertz Corporation*,
   No. 03:06-cv-00545-LRH-RAM, 2010 WL 1006882 (D. Nev. Mar. 17, 2010) ............... 5

*United States v. Bass*,
    404 U.S. 336 (1971) .................................................................................... 9, 10

*United States v. Hayes*,
    129 S. Ct. 1079 (2009) ..................................................................................... 10

*Updike, Kelly and Spellacy, P.C. v. Beckett*,
    850 A.2d 145 (Conn. 2004) ............................................................................... 8

*Washington Construction Co. v. Spinella*,
    80 A.2d 318 (N.J. Super. Ct. App. Div. 1951) ................................................. 9

**OTHER AUTHORITIES**

70 C.J.S. *Payment* § 120 .............................................................................................. 3

82 C.J.S. *Statutes* § 443 ............................................................................................... 9

73 AM. JUR. 2D *Statutes* § 138 ................................................................................... 10

17 C.J.S. *Contracts* § 42 ............................................................................................... 4

Fed. R. Civ. P. 9(b) ..................................................................................................... 10

Fed. R. Civ. P. 8(e)(2). ......................................................................................... 13, 14

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3

As demonstrated in defendants' opening brief, none of the counts in plaintiff Dwight Simonson's complaint states a claim as a matter of law.

Plaintiff's contract claim is a textbook example of a claim barred by the voluntary payment doctrine — Simonson admits in the complaint that he voluntarily paid the PlatePass invoice *after* personally investigating the charges and in the absence of any claimed fraud. Moreover, contrary to plaintiff's allegations, the parties' rental contract expressly authorizes Hertz to charge toll-related administrative fees.

Plaintiff's other pleading theories fare no better. Plaintiff does not, and cannot, plead facts showing that defendants acted with the knowing intent to defraud, defeating his New Jersey Consumer Fraud Act claim. And plaintiff's unjust enrichment claim cannot stand because Simonson admits that he signed a rental contract with Hertz that is binding and governs their relationship.

In his response, plaintiff tries to mislead and misdirect, making "artful" use of ellipsis and dropped key words in an effort to recast the contract's meaning in his favor, and concocting straw man and irrelevant arguments. Plaintiff's obfuscation, however, cannot change the complaint's actual allegations, the express terms of the parties' contract, or the governing law itself. Taken together, the complaint, the contract, and well-established case law demonstrate that plaintiff's complaint should be dismissed with prejudice as a matter of law.

**I.     The Voluntary Payment Doctrine Bars Plaintiff's Breach of Contract Claim.**

Defendants showed in their opening brief that plaintiff's breach of contract claim is barred by the voluntary payment doctrine. As plaintiff admits, "[s]ometime in July of

1

2009, Plaintiff received an invoice from ATS demanding payment for $10.75, which included a $0.75 toll charge and a $10.00 service charge." (Complaint at ¶ 40.) Plaintiff then "contacted ATS to confirm that the vehicle he had rented from Hertz was the same vehicle for which the toll and service charge had been assessed." (*Id.* at ¶ 41.) Upon that inquiry, ATS informed plaintiff that "the vehicle he rented from Hertz was enabled with PlatePass and that he was charged a $10.00 fee for use of the PlatePass service." (*Id.* at ¶ 42.) After making those inquiries, "Plaintiff paid ATS the sum of $10.75 . . . ." (*Id.* at ¶ 43.)

Those admitted facts demonstrate that plaintiff's breach of contract claim is barred under the voluntary payment doctrine as a matter of law. *Cont'l Trailways, Inc. v. Dir., Div. of Motor Vehicles*, 509 A.2d 769, 781 (N.J. 1986); *Realty Asset Props., Ltd. v. Twp. of Millstone*, No. L-908-05, 2006 WL 3456490, at *4-5 (N.J. Super. Ct. App. Div. Dec. 1, 2006) (dismissing complaint because payment was made without compulsion and without mistake of fact). *See also Flammia v. Maller*, 169 A.2d 488, 498 (N.J. Super. Ct. App. Div. 1961) (holding that payments made "with full knowledge of the facts" cannot be recovered under the voluntary payment doctrine).

In his response brief, plaintiff flatly ignores his own dispositive admissions. Instead, in an effort to dodge the impact of the voluntary payment doctrine, he misrepresents defendants' argument to be that plaintiff *incurred* the charges with full knowledge of the facts rather than what defendants actually argue, that plaintiff *paid* the invoiced charges with full knowledge of the facts. (Plaintiff's Opposition at 24-26.) Plaintiff, however, is not free to ignore defendants' actual argument and cannot rely on

2

the few conclusory and unsupported allegations in his complaint that he lacked knowledge to defeat defendants' motion to dismiss. Given that plaintiff's complaint is rife with detailed admissions about his pre-payment investigation of the charges and subsequent voluntary payment, his breach of contract claim is barred by the voluntary payment doctrine. *See Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) ("On a motion to dismiss, we accept the allegations as true-any set of facts will suffice, though we are not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."); *In re Tower Air, Inc.*, 416 F.3d 229, 235 (3d Cir. 2005) ("Even under the less stringent standard of a Rule 12(b)(6) motion to dismiss, all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true, but neither inferences nor conclusions of fact unsupported by allegations of specific facts upon which the inferences or conclusions rest are accepted as true.").

Plaintiff also argues that the voluntary payment doctrine does not bar his breach claim because the complaint alleges fraud (in this case, an alleged violation of New Jersey's consumer fraud statute). (Plaintiff's Opposition at 24-27.) But that argument ignores the authorities cited in defendants' opening brief holding that fraud allegations do not preclude application of the voluntary payment doctrine where the alleged fraud did not induce plaintiff to make the payment. *See Jacobson v. Nicholas*, 283 P. 684, 685 (Wash. 1930) (holding that plaintiff could not recover "upon the ground that the amount of money in dispute was a fraudulent demand on the part of [the defendant], because before paying the money, and while the contract was purely executory, he knew of such fraud, if there were fraud."); 70 C.J.S. *Payment* § 120 (Where "a payment is made

3

with full knowledge of the facts, and the fraud, if any, is not an inducement to the payment, the rule as to voluntary payments applies, and the payment cannot be recovered on the ground of fraud.").

In this case, plaintiff has not pleaded that defendants' alleged fraud was an inducement to payment. Instead, plaintiff claims that defendants committed fraud by not sufficiently disclosing toll-related administrative fees at the beginning of the rental. (Complaint at ¶¶ 78-79.) Plaintiff's payment of those fees, in contrast, happened nearly a month after plaintiff returned the car and in the absence of any fraud allegation at the time. (*Id.* at ¶¶ 36, 43.)[1]

Plaintiff also argues that the voluntary payment doctrine is inapplicable in "consumer contract cases or NJCFA cases." (Plaintiff's Opposition at 28.) Plaintiff offers no authority whatsoever to back up that argument, which appears (at best) to be wishful thinking on his part. In fact, the contrary is true. The voluntary payment doctrine is well recognized in New Jersey. As recently as in 1986, the New Jersey Supreme Court affirmed the application of the voluntary payment doctrine to bar a claim holding that "[i]t long has been the general common-law rule that where a party, without mistake of fact, fraud, duress, or extortion, voluntarily pays money on a demand that is

---

[1] Plaintiff cites *In the Matter of International Harvester Co.*, 104 F.T.C. 949 n.17 (Dec. 21, 1984) and 17 C.S.J. *Contracts* § 42 for the proposition that defendants' alleged fraud bars the application of the voluntary payment doctrine, because plaintiff's payment cannot justify defendants' alleged fraudulent nondisclosures at the beginning of the rental. (Plaintiff's Opposition at 27.) However, the cited authorities do not support plaintiff's argument. *In the Matter of International Harvester Co.* is a decision issued by the Federal Trade Commission which does not address the voluntary payment doctrine, but rather deals with violations of the Federal Trade Commission Act. Similarly, the treatise is inapposite because it discusses contract formation and not breach of contract.

not enforceable against him, he may not recover it." *Cont'l Trailways, Inc. v. Dir., Div. of Motor Vehicles*, 509 A.2d 769, 781 (N.J. 1986). Since then, numerous lower courts in New Jersey have applied the voluntary payment doctrine to bar claims in appropriate circumstances. *See Smith v. Hudson Cnty. Register*, 988 A.2d 114, 122 (N.J. Super. Ct. App. Div. 2010) (The voluntary payment doctrine "provides that when a person has voluntarily overpaid another party, particularly a government agency, that person may not obtain a refund of the excessive amount, absent a showing of fraud, duress, extortion, mistake of fact, or some other special justification."); *Realty Asset Props., Ltd. v. Twp. of Millstone*, No. L-908-05, 2006 WL 3456490, at *4-5 (N.J. Super. Ct. App. Div. Dec. 1, 2006) ("'When money is demanded as a legal right, and it is paid without compulsion, and with a full comprehension of the facts, the money so paid cannot be reclaimed by a suit at law.'") (citing *Riker v. Jersey City*, 38 N.J.L. 225, 225-26 (N.J. Sup. Ct. 1876)). Thus, there is no basis for this Court, as plaintiff urges, to "predict" that the New Jersey Supreme Court would hold that the voluntary payment defense is not available to defendants in New Jersey.

Finally, plaintiff argues that S*obel v. Hertz Corp.*, No. 03:06-cv-00545-LRH-RAM, 2010 WL 1006882, at *4 (D. Nev. Mar. 17, 2010), is evidence that the voluntary payment doctrine does not apply in this case. (Plaintiff's Opposition at 28.) That argument stretches fair advocacy beyond its limit. The *Sobel* court based its ruling on the fact that the voluntary payment doctrine had not been applied by Nevada courts for over 120 years. *Sobel*, 2010 WL 1006882, at *2. In contrast, as discussed above, New Jersey

5

courts have repeatedly (and recently) affirmed the viability of the voluntary payment doctrine in New Jersey.

## II. Plaintiff Has Not Pleaded A Viable Breach Of Contract Claim.

As defendants established in their opening brief, the parties' contract expressly states that defendants may charge administrative fees — the very charges that are at the core of plaintiff's complaint. The contract states:

> . . . [plaintiff] authorizes [Hertz] to release [plaintiff's] rental and charge card information to [Hertz's] designated vendor, American Traffic Solutions for the exclusive purpose of processing and billing tolls, parking or traffic violation fines and penalties and related administrative fees incurred during the term of [plaintiff's] rental.

(Complaint at ¶ 34.) This provision demonstrates that plaintiff's breach of contract claim should be dismissed with prejudice as a matter of law. It is axiomatic that defendants cannot be liable for breach by charging fees expressly allowed under the contract.

In response to this inconvenient fact, plaintiff obfuscates. For instance, plaintiff falsely argues that defendants may not charge toll-related administrative fees because such fees are not specifically itemized and tallied at the start of the rental in the estimated charges section of the contract. (Plaintiff's Opposition at 10.) To make that argument, plaintiff misquotes the parties' contract, replacing with ellipsis words that show his argument to be false. In relevant part, the contract states the following, with the text deleted by plaintiff shown in brackets:

> **You agree to pay charges at the rates and in the amounts that appear on the left of the table below.** [Taxable charges are denoted by a T, and additional details about some charges appear beneath the table.] Our estimates of Your total charges appear on the right of the table below. [Our estimates assume (1) You will rent and return the vehicle at the times and places

6

indicated, (2) if mileage charge applies, You will drive no more than the distance indicated and (3)] You will not incur any charges that either are listed below opposite **** or cannot be calculated until return. If any of these assumptions is incorrect, additional charges or charges at higher rates may apply.

(Complaint, Ex. A) (brackets supplied).

Reading this provision in full demonstrates that plaintiff willfully ignores the contract's express terms, which state that estimated charges do not include, among other things, potential charges that cannot be calculated until after the rental. Toll-related administrative fees are precisely the type of charges that "cannot be calculated until return" of the rental vehicle, because Hertz does not know whether a customer will incur toll charges while driving the car, and if so, the amount of those toll charges and related administrative fees. By hiding from the Court the key contract language — "[our] estimates assume" — plaintiff inappropriately argues that the contract says something totally different than its express, unambiguous language.

Then, in a pure misdirection effort, plaintiff devotes nearly five pages of his response brief to describing contract formation standards in New Jersey and likewise arguing that the parties' contract contains insufficient detail about toll-related administrative charges. (Plaintiff's Opposition at 5-11.) But contract formation standards are totally irrelevant to plaintiff's breach of contract claim. Plaintiff's complaint makes no allegation that the parties' contract is unenforceable or void due to some contract-formation defect or related issue. To the contrary, plaintiff repeatedly alleges in the complaint that the contract is valid and enforceable. (*See e.g.,* Complaint at ¶ 64, "[a]t all times relevant to the matters set forth herein there existed a valid and

7

enforceable rental contract between Plaintiff and Hertz," and Complaint at ¶ 67, "[t]the terms and conditions of the rental contracts Plaintiff and Class Members entered govern and give rise to the rights, duties and obligations of Defendants on one hand, and Plaintiff and Class Members on the other hand . . . .")

Thus, the lengthy arguments in plaintiff's brief regarding omitted "material" terms, "bargained for" terms, and related contract-formation points are irrelevant to plaintiff's breach of contract claim and cannot defeat defendants' motion to dismiss. *See Updike, Kelly and Spellacy, P.C. v. Beckett*, 850 A.2d 145, 171 n.29 (Conn. 2004) ("[t]o the extent that the defendants claim that there was no agreement to pay the disputed fees, implicit or otherwise, because the plaintiff's failure to disclose essential terms of the contract precluded a meeting of the minds, any such claim would fall not under the rubric of breach . . . but contract formation.").

Plaintiff also fails to support his supposed grammarian's approach to contract interpretation — that defendants may charge administrative fees for "parking or traffic violation fines and penalties," but not for tolls, because there is no comma after the word "penalties" in the contract. (Plaintiff's Opposition at 11-13.) Plaintiff asks the Court to adopt a construction that badly conflicts with the natural and fair reading of the unambiguous contract language, and would lead to an absurd outcome.

If the last clause of the sentence at issue modifies only the immediately proceeding clause, as plaintiff argues, then defendants would have an unlimited right to bill customers for any tolls they chose to impose, and would not be limited to charging customers only for tolls "incurred during the term of [plaintiff's] rental." Under basic

8

construction rules, that unreasonable interpretation must be rejected. *Burnstine v. Margulies*, 87 A.2d 37, 39 (N.J. Super. Ct. App. Div. 1952) ("A construction which makes the contract fair and reasonable will be preferred to one which leads to harsh or unreasonable results."); *Washington Const. Co. v. Spinella*, 80 A.2d 318, 320 (N.J. Super. Ct. App. Div. 1951) ("The words of contracts should be given a reasonable meaning rather than an unreasonable one . . . ."); *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 137 (3d Cir. 2004) ("When interpreting contracts, we are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible.").

Read fairly, the contract provision at issue unambiguously provides that Hertz is authorized to release a customer's rental and charge card information to ATS for the processing and billing of three things incurred by customers during the term of the rental: (1) tolls; (2) parking or traffic violation fines and penalties; and (3) related administrative fees. The absence of a serial comma after the word "penalties" in the relevant paragraph does not change that plain meaning. *U.S. v. Bass*, 404 U.S. 336, 340, n.6 (1971) (Because "use of commas [at the end of series] is discretionary ... [the court] will not attach significance to an omitted comma.").

Moreover, plaintiff's reliance on the "last antecedent doctrine" is misplaced. That doctrine "applies only where there are uncertainties or ambiguities, [or] when other rules of construction fail." 82 C.J.S. *Statutes* § 443. *See also Raybestos-Manhattan, Inc. v. Glaser*, 365 A.2d 1, 8-9 (N.J. Super. Ct. Ch. Div. 1976). Here, as noted above, there is no ambiguity in the provision at issue. Further, the last antecedent doctrine is not

9

absolute or inflexible. *See U.S. v. Bass*, 404 U.S. 336, 339-41, n.6 (1971) (holding that the phrase "in commerce or affecting commerce" following "receives, possesses, or transports" qualified all three antecedents in the list despite the absence of a comma after "transports," and noting that "many leading grammarians . . . concede that use of [serial] commas is discretionary. ... When grammarians are divided, and surely where they are cheerfully tolerant, we will not attach significance to an omitted comma.") *See also U.S. v. Hayes*, 129 S. Ct. 1079, 1086 (2009) ("The rule of the last antecedent, however, is not an absolute and can assuredly be overcome by other indicia of meaning."); 73 AM. JUR. 2D *Statutes* § 138 ("[the last antecedent] rule of statutory construction, however, is not controlling or inflexible.").

### III. Plaintiff's Consumer Fraud Claim Should Be Dismissed Because Plaintiff Has Pleaded No Facts Demonstrating That Defendants Intended To Deceive Him.

Plaintiff's complaint alleges an "omission" claim under the New Jersey Consumer Fraud Act ("NJCFA"). *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) ("Unlawful practices [under the NJCFA] fall into three general categories: affirmative acts, knowing omissions, and regulation violations."). Thus, to survive a motion to dismiss, plaintiff must plead facts — with the particularity required under Fed. R. Civ. P. 9(b) — showing that defendants acted with knowledge and intent to defraud plaintiff. *Id.* ("[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud."). Because plaintiff has failed to plead such facts, his consumer fraud claim must be dismissed.

In response, plaintiff takes issue with the numerous cases defendants cited in their opening brief demonstrating that courts routinely dismiss consumer fraud act claims in New Jersey where the alleged "omission" is actually authorized in the parties' contract.[2] (Plaintiff's Opposition at 17-18.) But, as defendants have shown, the contract expressly authorizes defendants to process and bill toll-related administrative fees. That disclosure makes this case fit neatly into the *Hassler*, *Delaney*, and *Ramon* line of cases. Although plaintiff argues that defendants' contract disclosure is not "good enough," plaintiff cites no authority whatsoever to support that argument.

Plaintiff also argues that he is free to plead alternative theories of fraud — both an omission case and an affirmative misrepresentation case (the latter of which requires no showing of intent to deceive under the statute). (Plaintiff's Opposition at 19.) While alternative pleading may be available to plaintiff, the fact is that plaintiff's complaint pleads *only* an omission claim, not an affirmative representation claim. There are no factual allegations in the complaint that defendants committed any affirmative

---

[2] *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009) (dismissing consumer fraud claim where the alleged omission and unlawful conduct was "expressly authorized by the plain language of the parties' Agreement"); *Delaney v. Am. Express Co.*, Civ. No. 06-5134 (JAP), 2007 WL 1420766, at *7 (D.N.J. May 11, 2007) (dismissing breach of contract and consumer fraud claims based on alleged omissions where the parties' agreement "contain[ed] the very information that Plaintiffs allege was misrepresented, suppressed, or concealed"); *Ramon v. Budget Rent-A-Car System, Inc.*, No. 06-1905, 2007 WL 604795, at *5 (D.N.J. Feb. 20, 2007) (holding that "baseless, conclusory [allegations] . . . contradicted by the plain language of [a] rental agreement" fail to state an unlawful practice under the New Jersey Consumer Fraud Act); *Harvey v. Nissan N. Am., Inc.*, No. C-12016-04, 2005 WL 1252341, at *15 (N.J. Super. Ch. Div. Apr. 29, 2005) (plaintiffs failed to state a cognizable unlawful omission under the New Jersey Consumer Fraud Act when defendant car company used various means in addition to contract terms to disclose necessary information to the public because "one seeking concealment would not have acted so openly").

11

misrepresentations. Plaintiff cannot change that fact, as he tries, by repeatedly (but incorrectly) asserting in his brief that his claim raises affirmative misrepresentation allegations. *See Monarch Life Ins. Co. v. Senior*, No. 06-559(JLL), 2006 WL 3825138, at *5 (D.N.J. Dec. 22, 2006). In *Monarch*, the court found that defendant's allegation appeared to implicate an omission, not a misrepresentation, despite defendant's insistence at employing the term "misrepresentation." *Id.* The court stated that "while the Defendant employs the term 'misrepresentation' in the Counterclaim and brief, it appears that Defendant's NJCFA claim is based on Plaintiff's alleged failure to inform Defendant that disability benefits may be paid under a reservation of rights, and similar allegations." *Id.* The court noted that this is "an important distinction because when a party alleges that an omission forms the basis for a NJCFA claim, the party must allege and prove intent to defraud." *Id.*

Finally, plaintiff cannot back up his argument that his complaint sufficiently pleads that defendants knowingly intended to deceive plaintiff. (Plaintiff's Opposition at 23-24.) Plaintiff's reference to irrelevant sentences in his complaint and other sentences that posit — in a conclusory and unsupported manner — that defendants intended to deceive plaintiff fail as a matter of law to resuscitate his claim. As a matter of law, plaintiff cannot rely on such cursory and unsupported allegations to defeat defendants' motion to dismiss plaintiff's fraud claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Ashcroft v.*

12

*Iqbal*, 129 S. Ct. 1937, 1949 (2009)); *Bianchi v. Lazy Days R.V. Ctr., Inc.*, No. 06-1979 (MLC), 2007 WL 1959268, at *4 (D.N.J. Jul. 5, 2007) (granting motion to dismiss because plaintiff failed to allege facts as to defendant's intent to commit an unlawful act under the NJCFA).

### IV. Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because Plaintiff Admits That The Rental Agreement Is Binding And Governs The Parties' Relationship.

Plaintiff's argument that his unjust enrichment claim should not be dismissed because he is allowed to plead in the alternative, (Plaintiff's Opposition at 29-31), ignores that plaintiff repeatedly admits in the complaint that the parties' contract is valid and binding, and that it governs the parties' relationship, (Complaint at ¶¶ 34, 37, 64, 65, 67, 85). In such circumstances, courts routinely refuse to allow plaintiffs to plead alternative theories of breach of contract and unjust enrichment. *See HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F. Supp. 2d 677, 692 (D.N.J. 2008) (Plaintiffs' "argument that they have pleaded unjust enrichment as an alternative theory of recovery under Rule 8(e)(2), Fed.R.Civ.P., is unavailing, because, having acknowledged in their pleadings the existence of these express contracts, there is no 'alternative theory' that would permit their recovery in quasi-contract under" the applicable state law.); *Qwest Commc'ns Corp. v. Herakles LLC*, No. 2:07-cv-00393-MCE-KJM, 2008 WL 783347, at *13 (E.D. Cal. Mar. 20, 2008) ("However, even though Rule 8(e)(2) ... allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff to invoke state law to an unjust enrichment claim while also alleging an express contract."); *Bucciarelli-Tieger v. Victory*

13

*Records, Inc.*, 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007) ("While plaintiffs are entitled to plead alternative theories under Rule 8(e)(2), it is well-settled that plaintiffs' unjust enrichment claim must not include allegations of the existence of a specific contract."); *SMC Corp. v. Peoplesoft USA, Inc.*, No. 1:00-cv-01095-LJM-VS, 2004 WL 2538641, at *3 (S.D. Ind. Oct. 12, 2004) ("While [plaintiff] is entitled under Rule 8(e)(2) to plead the alternative claims of breach of contract and unjust enrichment despite the inconsistency between those claims, [plaintiff's] unjust enrichment claim can not include allegations of a specific contract governing the parties' relationship."); *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ("Even though Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to an unjust enrichment claim while also alleging an express contract."); *New Paradigm Software Corp. v. New Era Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) ("Because both parties agree that a valid and enforceable contract exists between them, Plaintiff may not plead the quasi-contractual theory of unjust enrichment.").

This black-letter law requires that plaintiff's unjust enrichment claim be dismissed as a matter of law with prejudice.

## CONCLUSION

Despite his best efforts, plaintiff cannot misdirect this Court with ellipsis and mischaracterizations of defendants' arguments from the legally-required conclusion that plaintiff has failed to plead a viable claim. Plaintiff voluntarily paid charges that he

14

investigated, pursuant to a contract that he acknowledges was binding and authorized the very charges about which plaintiff complains. And plaintiff has failed to plead any facts from which it could be inferred that defendants intended to mislead him. As a result, his claims for breach of contract, consumer fraud, and unjust enrichment should be dismissed with prejudice as a matter of law.

    Respectfully submitted,

    The Hertz Corporation, American Traffic Solutions, Inc., and PlatePass, LLC

    By: */s/Michael J. Vassalotti*
        One of their attorneys

Michael J. Vassalotti
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
Tel: (856) 854-8900
Fax: (856) 858-4967

Ross B. Bricker
John F. Ward, Jr.
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Tel: (312) 222-9350
Fax: (312) 840-7650